# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **PETER MORJAL,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | No. 12 CV 185 |
| v. ) | |
| ) | Judge Joan H. Lefkow |
| ) | |
| **THE CITY OF CHICAGO, Illinois, a** ) | |
| **municipal corporation, and Chicago Police** ) | |
| **Officers FRANK PROANO (#9315), HAROLD** ) | |
| **BONE (#4776), DAVID MULLANY (#10886),** ) | |
| **and DIANE PICCOLO,** ) | |
| ) | |
| **Defendants.** ) | |

## OPINION AND ORDER

On January 10, 2012, Peter Morjal filed a seven-count civil rights complaint against defendants City of Chicago, Frank Proano, Harold Bone, David Mullany, and Diane Piccolo, alleging unlawful search and seizure, excessive force, conspiracy, false imprisonment, assault, and malicious prosecution. On May 1, 2012, defendants made an offer of judgment pursuant to Federal Rule of Civil Procedure 68(a), which Morjal accepted on May 8, 2012. (Dkt. 23.) Judgment was entered against defendants for $10,001.00, plus reasonable attorney's fees and costs. (Dkt. 25.) As the parties were unable to agree on the amount of attorney's fees to be awarded to Morjal, Morjal filed the present petition seeking $22,190.50 in attorney's fees. (Dkt. 30.) For the reasons set forth herein, Morjal's petition [#30] is granted in part and denied in part. Morjal is awarded $17,205.50 in attorney's fees.

## ANALYSIS

Section 1988 provides the district court with discretion to award reasonable attorney's fees to the prevailing party in civil rights actions brought pursuant to § 1983. 42 U.S.C. § 1988.

In determining the amount of the award, the court initially determines the lodestar amount. *Hensley* v. *Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983); *Johnson* v. *GDF, Inc.*, 668 F.3d 927, 929-30 (7th Cir. 2012). The court may then adjust the lodestar amount upward or downward depending on a variety of factors, such as the degree of success, the novelty and difficulty of the issues, and awards in similar cases. *Hensley*, 461 U.S. at 430 n.3, 434. Although only disputed matters are discussed in this opinion, the court has reviewed all of the materials submitted by the parties in reaching its conclusions.

## I.     Calculating the Lodestar

The lodestar is determined by calculating the number of hours reasonably expended and multiplying that number by a reasonable hourly rate for each moving attorney. *Hensley*, 461 U.S. at 433. "An award of the originally calculated lodestar is presumptively reasonable, and it is the City's burden to convince [the court] that a lower rate is *required*." *Robinson*, 489 F.3d at 872 (citations omitted). Morjal's request is summarized as follows:

| MORJAL'S LODESTAR CALCULATION | | | |
|---|---|---|---|
| | Hours | Rate | Total |
| Ms. Hamilton | 30.7 | $425 | $13,047.50 |
| Ms. Uribe | 44.0 | $185 | $8,140.00 |
| Paralegal | 11.8 | $85 | $1,003.00 |
| **Total** | 86.5 | | $22,190.50 |

Defendants object to the reasonableness of the hours expended by Morjal's counsel as well as Ms. Hamilton's rate, which they submit should be reduced to $325 per hour. All told, defendants contend that the fee award should be no more than $8,555.55. (Doc. 39.)

A.       **Reasonableness of the Number of Hours Expended**

What qualifies as a "reasonable" use of a lawyer's time "is a highly contextual and fact-specific enterprise," and as such, the court has "wide latitude" in awarding attorney's fees. *Sottoriva* v. *Claps*, 617 F.3d 971, 975 (7th Cir. 2010) (citation omitted) (internal quotation marks omitted). The court considers whether hours are "excessive, redundant, or otherwise unnecessary" and may reduce the lodestar calculation, for example, for hours spent on unrelated and unsuccessful claims, hours attorneys would not bill to their clients, and hours for which the prevailing party has failed to provide adequate support. *Hensley*, 461 U.S. at 433–34.

1.       **Administrative and Clerical Tasks**

Defendants first argue that Morjal's counsel's billing records are "rife with entries which improperly charge" for administrative tasks that are not compensable. (Dkt. 39 at 4.) The court agrees that time spent "organizing file folders, preparing document[s], assembling filings, electronically filing documents, sending materials, docketing or 'logging' case events into an internal case tracking system, and telephoning court reporters" is noncompensable. *Delgado* v. *Vill. of Rosemont*, No. 03 C 7050, 2006 WL 3147695, at *2 (N.D. Ill. Oct. 31, 2006). But time spent communicating with Morjal and his criminal counsel and obtaining documents from IPRA does not fall under this rubric. Nor does time spent preparing service documents or ensuring compliance with local rules. *Delgado* v. *Astrue*, No. 11 CV 02849, 2012 WL 6727333, at *4 (N.D. Ill. Dec. 28, 2012); *Moore* v. *Midland Credit Mgmt., Inc.*, No. 2:10-CV-0218-JD-PRC, 2012 WL 6217597, at *13 (N.D. Ind. Dec. 12, 2012). Taking this into consideration, the court will deduct 1.6 hours of Ms. Hamilton's time, 1.8 of Ms. Uribe's time, and 4.6 hours of paralegal time for noncompensable clerical tasks.

## 2. Hours Incurred after the Offer of Judgment

"When an offer of judgment unambiguously limits recovery of attorney's fees, courts should honor that limitation." *Stephens* v. *Cirrincione*, No. 11 C 6354, 2012 WL 2872448, at *3 (N.D. Ill. July 11, 2012) (citing *Decker* v. *Transworld Sys., Inc.*, No. 09 C 50073, 2009 WL 2916819, at *2 (N.D. Ill. Sept. 1, 2009)). The offer of judgment here included "reasonable attorney's fees and costs accrued to date" (Dkt. 23-1), which is ambiguous as to whether it includes fees accrued up to and including the date of the offer or the date of its acceptance.

Defendants urge this court to follow *Stephens*, where the court included fees only up to the date of the offer of judgment. 2012 WL 2872448, at *3. But in *Stephens*, the plaintiff had agreed not to seek fees beyond this date, and the dispute was only over whether fees incurred on the date of the offer were compensable, a concession Morjal has not made. *Id.* Morjal instead urges the court to follow *Brown* v. *Patelco Credit Union*, where the court awarded fees through the date of acceptance. No. 09-CV-5393, 2011 WL 4375865, at *6 (N.D. Ill. Sept. 20, 2011). *Brown* is also distinguishable, as there the defendant only challenged payment for fees incurred after the date of acceptance. *Id.*

Traditional contract principles of interpretation, applicable to the offer of judgment here, dictate that the ambiguity be construed against defendants, the drafters of the offer. *Harbor Motor Co.* v. *Arnell Chevrolet-Geo, Inc.*, 265 F.3d 638, 647–48 (7th Cir. 2001); *Webb* v. *James*, 147 F.3d 617, 620 (7th Cir. 1998). Thus, Morjal may recover fees incurred through the date of his acceptance of the offer of judgment. *Lasswell* v. *City of Johnston City*, 436 F. Supp. 2d 974, 981 (S.D. Ill. 2006) (finding phrase "costs accrued to date" ambiguous and allowing attorney's fees for time spent working on case through date of acceptance). Had defendants wanted to ensure that their offer was limited to costs accrued through the date of the offer itself, they

should have specifically stated so. *See, e.g.*, *Sanchez* v. *Prudential Pizza, Inc.*, 709 F.3d 689, 690 (7th Cir. 2013) (defendants making offers of judgment must "be specific and clear in their offers" for otherwise "[a]ny ambiguities will be resolved against them"); *Decker*, 2009 WL 2916819, at *3 (language of offer precluded recovery of costs after date of offer of judgment where it specifically provided for fees "accrued through the date of this Offer of Judgment").

### 3. Tasks Unnecessary to Litigation

Defendants argue that Morjal seeks fees for several tasks that were unnecessary to the litigation. (Dkt. 39 at 6-8.) Primarily, defendants dispute 6.1 hours billed for the preparation of a demand letter, a letter they claim they never requested. (Dkt. 39 at 7.) But Morjal has submitted documents demonstrating that defendants requested a demand (*see, e.g.*, Dkt. 46-6, 46-8), and Morjal's counsel was justified in providing not only a dollar amount but also support for that requested amount. Nonetheless, considering the contents of the demand letter, the court concludes that 6.1 hours is an excessive amount of time for its preparation. The demand letter is relatively short (less than two pages), primarily recites facts found in the complaint, and does not include any citations to case law. The court will reduce the time spent on the demand letter from 3.6 to 1.6 hours for Ms. Uribe, the primary drafter of the demand letter, and from 2.5 to .5 hours for Ms. Hamilton, who reviewed and provided comments on the letter. *See Trs. of Chicago Plastering Inst. Pension Trust* v. *Cork Plastering, Inc.*, No. 03 C 6867, 2008 WL 728897, at *5 (N.D. Ill. Mar. 18, 2008) (3.1 hours for a two-page letter was outside the bounds of reasonableness, but there is "nothing unusual or inappropriate" about having two attorneys work on the same document); *Blackwell* v. *Kalinowski*, No. 08 C 7257, 2012 WL 469962, at *7 (N.D. Ill. Feb. 13, 2012) (1.2 hours for drafting a "brief" demand letter was reasonable).

Defendants next contend that the time Ms. Hamilton spent researching and reviewing case law on *Monell* claims and reinstatement of criminal charges was unnecessary, as no *Monell* claim was filed and the reinstatement research was unrelated to Morjal's civil case. (Dkt. 39 at 7.) The court agrees that the time spent reviewing recent case law that did not relate to any of the claims actually asserted by Morjal is not compensable. Thus, the court will reduce Ms. Hamilton's time by .7 hours.

Defendants also contest the time Ms. Hamilton and Ms. Uribe spent investigating the prior lawsuit history of the defendant officers in this case. (Dkt. 39 at 8.) This form of due diligence has become common, and although it may ultimately be excluded as improper character evidence, the court is not willing to find it unnecessary to the factual investigation of Morjal's case.

Finally, defendants claim that two of Ms. Hamilton's entries are too vague to allow the court to determine whether the time was reasonable. (Dkt. 39 at 8.) Ms. Hamilton has reduced these entries from .5 to .2 hours in total. (Dkt. 46 at 11.) The one entry for correspondence with Ms. Hamilton's paralegal includes a general description of the contents of the email. And while the court "would prefer to see at least some hint of the purpose" for the correspondence with Morjal's criminal attorney, such contact must be expected in the prosecution of a civil case tied to a criminal one. *See Brown*, 2011 WL 4375865, at *6.

### 4. Lower Level Tasks

Defendants maintain that fees sought for work by Ms. Hamilton and Ms. Uribe that should have been performed by a paralegal, such as preparing and reviewing attorney appearances, the civil cover sheet, and notices of deposition, filing documents on PACER, and preparing documents for production, should be compensated at a paralegal rate. (Dkt. 39 at 9.)

The court agrees and will credit .8 hours of Ms. Hamilton's time and .8 hours of Ms. Uribe's time at the paralegal rate of $85 per hour. *See Goodale* v. *George S. May Int'l Co.*, No. 09 C 7848, 2010 WL 2774013, at *4 (N.D. Ill. July 14, 2010) (allowing recovery for paralegal work performed by an attorney at the paralegal rate); *Williams* v. *Z.D. Masonry, Corp.*, No. 07 C 6207, 2009 WL 383614, at *5 (N.D. Ill. Feb. 17, 2009) (allowing for recovery for electronic filing at a paralegal rate).

### 5. Basic Tasks and Emails

Defendants argue that the amount of time spent on the so-called "basic tasks" of drafting discovery requests and responses and reviewing documents for potential witnesses and other information is excessive and should be reduced. (Dkt. 39 at 9-12.) But defendants' requests for reductions are arbitrary, with no objective standard provided, and the amount of time spent drafting and reviewing these documents and ensuring that they fit the case at issue is reasonable.[1] Nor does the fact that discovery responses were not served change this conclusion. *See Torgerson* v. *Arrow Fin. Servs.*, No. 06 C 6032, 2007 WL 1941752, at *4 (N.D. Ill. June 29, 2007); *A.M. ex. rel. Mundy* v. *Accounts Recovery Bureau*, No. 1:11-cv-929-WTL-DKL, 2012 WL 3764034, at *5 (S.D. Ind. Aug. 8, 2012).

Second, defendants argue that a conversation regarding settlement between Ms. Hamilton and defense counsel could not have lasted .5 hours. (Dkt. 39 at 12.) But without any affidavit or other evidence to substantiate defendants' representation, the court has no reason to question Ms. Hamilton's contemporaneous billing records.

Defendants also argue that the court should reduce the amount of time billed for email communications. (Dkt. 39 at 12-14.) An inordinate number of entries in Morjal's counsel's

---

[1] Defendants also challenged various entries billed in .25 increments. Morjal adjusted these entries in his reply, and thus these objections are moot.

7

records do relate to email communications.  For instance, 116 of the total of 175 entries for Ms. Hamilton, just over two-thirds, relate to e-mails.  (*See* Dkt. 46-1.)  This is due, in part, to Morjal's counsel's billing practice of separating out each email that is sent or received as its own entry, typically each for .1 hours.  Although Morjal argues that consolidating entries would amount to block billing, the court disagrees.  Combining several entries related to the same email chain, while providing a sufficient description, would still allow the court and opposing counsel to determine whether the hours were reasonable.  *See Gibson* v. *City of Chicago*, 873 F. Supp. 2d 975, 986 (N.D. Ill. 2012) (relevant inquiry is whether detail is sufficient to determine if hours expended were reasonable).  It also would not lead to the overstatement present here; reviewing a one- or two-line email (or sending the same) does not take 6 minutes.  After considering all the time entries for email communications, the court will subtract 1.5 hours of both Ms. Hamilton's and Ms. Uribe's time.

### 6. Duplicative Billing

Finally, defendants object to certain allegedly duplicative hours.  Although the fee petition should be scrutinized for duplicative time that would not be billed to a private client, "merely because two lawyers have billed for the same task does not mean that the hours should be deducted."  *Gibson*, 873 F. Supp. 2d at 989.  Defendants first ask that the court only count the time spent by Ms. Hamilton, and not Ms. Uribe, in reviewing attorney appearances.  The court does not find it unreasonable for both attorneys to have reviewed these filings but agrees that allowing each to recover for .4 hours for this task is excessive and not an amount that would be honored by a paying client.  The court will allow each to recover for only .1 hours for their review of attorney appearances.  Next, defendants argue that Ms. Hamilton's and Ms. Uribe's

time be reduced for two in-person meetings held on the same day related to the same subject.[2] The court is not convinced that these interoffice meetings were unnecessary or excessive. *See Tchemkou* v. *Mukasey*, 517 F.3d 506, 511-12 (7th Cir. 2008) ("The practice of law often, indeed usually, involves significant periods of consultation among counsel. Talking through a set of authorities or seeking advice on a vexing problem is often significantly more efficient than one attorney's trying to wade through the issue alone."). Third, defendants suggest that Ms. Hamilton need not have reviewed defendants' discovery requests. But Ms. Hamilton, the attorney in charge of the litigation, needed to be aware of the content of defendants' discovery requests. Finally, the court will reduce Ms. Uribe's time for the April 19, 2012 meeting by .1 hours to be consistent with Ms. Hamilton's time entry for that meeting.

### 7. Total Revised Hours Billed

In summary, the court will reduce Ms. Hamilton's hours to 23.8, Ms. Uribe's to 37.5, and the paralegal's hours to 8.8 for purposes of calculating the lodestar amount.

### B. Reasonable Hourly Rate for Ms. Hamilton

Morjal bears the initial burden of demonstrating that Ms. Hamilton's requested rate is "in line with those prevailing in the community." *Pickett* v. *Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011) (quoting *Blum* v. *Stenson*, 465 U.S. 886, 895 n.11, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)). If this burden is met, defendants then have the burden to "offer evidence that sets forth 'a good reason why a lower rate is essential.'" *Id.* (quoting *People Who Care* v. *Rockford Bd. of Educ.*, 90 F.3d 1307, 1313 (7th Cir. 1996)).

Morjal submitted extensive evidence to support Ms. Hamilton's initially requested $400 rate. (Dkt. 30 at 7-8 & Dkt. 30-1.) Specifically, Morjal provided Ms. Hamilton's affidavit, two

---

[2] Defendants also argued that Ms. Uribe's time entry should be reduced to match Ms. Hamilton's. (Dkt. 39 at 14.) This objection was addressed in Morjal's revised billing records and is thus moot.

attorney-client agreements executed in June and August 2012 where each client agreed to pay $400 per hour for Ms. Hamilton's work, another decision from this district, *Gibson*, 873 F. Supp. 2d at 985, in which Ms. Hamilton's services were valued at a $395 hourly rate, and affidavits from three practicing civil rights attorneys, Christopher R. Smith, Lawrence V. Jackowiak, and Jeffrey B. Granich.[3] Morjal also cited the Laffey Matrix rates, guidelines used in the District of Columbia for fee-shifting cases that suggest that a $435 hourly rate (without taking into account the locality pay differential) would be appropriate for an attorney with Ms. Hamilton's experience.[4] After submission of this fee petition, a report and recommendation was issued in *Richardson* v. *City of Chicago*, in which the court found Ms. Hamilton's requested $425 rate to be reasonable. No. 08 C 4824, 2012 WL 6185867, at *11 (N.D. Ill. Nov. 20, 2012). Morjal then supplemented his petition to reflect this higher rate, based solely on that recommendation. (Dkt. 50.)

Defendants argue that a $325 hourly rate is more reasonable for someone of Ms. Hamilton's experience and skill, for although Ms. Hamilton has seventeen years of experience, she has only been working on civil rights cases since 2003 and on the plaintiff's side since 2006. (Dkt. 39 at 16-17.) But this alone would not merit discounting her rate to $325. Additionally, defendants argue that Ms. Hamilton should not command a similar rate to that approved for Jon Loevy, recognized as the leader of "what is fairly considered one of the premier Chicago-area law firms concentrating in plaintiffs section 1983 litigation." *Jimenez* v. *City of Chicago*, No. 09 C 8081, 2012 WL 5512266, at *2 (N.D. Ill. Nov. 14, 2012). Although at the time of briefing, Mr. Loevy had been approved for at most an hourly rate of $425 (Dkt. 39 at 16 (citing *Blackwell*,

---

[3] Defendants also refer to an affidavit of Thomas P. Needham (Dkt. 39 at 17), but no such affidavit is in the record.
[4] The Seventh Circuit has not formally adopted the Laffey Matrix, and judges in this district typically consider it as only one factor in determining a reasonable rate. *Gibson*, 873 F. Supp. 2d at 983-84.

2012 WL 469962, at *3)), another court in this district subsequently approved a $495 hourly rate was approved for his work. *Jimenez*, 2012 WL 5512266, at *2. Considering the limited submission of evidence of Ms. Hamilton's successes in litigating civil rights cases, the court does not find it reasonable for Ms. Hamilton to command the same rate Mr. Loevy was awarded until recently. Nonetheless, based on the documents submitted and prior awards in the $395 to $425 range for Ms. Hamilton's work, using the originally requested $400 rate is reasonable.

### C. Total Lodestar Calculation

Based on the foregoing, the court's revised lodestar calculation is as follows:

| REVISED LODESTAR CALCULATION | | | | |
|---|---|---|---|---|
| | Hamilton | Uribe | Paralegal | Total |
| Hours Requested | 30.7 | 44.0 | 11.8 | 86.5 |
| *Revised Hours* | 23.8 | 37.5 | 8.8 | 70.1 |
| | | | | |
| *Revised Rates* | $400 | $185 | $85 | |
| **Lodestar** | $9,520 | $6,937.50 | $748 | **$17,205.50** |

## II. Adjustment to the Lodestar Amount

After calculating the lodestar amount, the court must determine whether that amount should be adjusted upward or downward, considering "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Hensley*, 461 U.S. at 430 n.3. The court has addressed many of these factors already in determining the lodestar amount and will not do so further. *See id.* at 434 n.9 ("[M]any of the

factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.").

Defendants briefly argue that the amount requested by Morjal is not proportional to the judgment amount, yet they do not suggest an appropriate percentage by which the lodestar amount should be decreased.  (Dkt. 39 at 3.)   The Seventh Circuit has no strict proportionality rule, recognizing that the purpose of fee-shifting statutes, to allow for litigation of smaller claims despite the likely higher cost of litigation, would not be served in cases like the one here if attorney's fees were required to be proportional to the amount recovered.  *See Richardson*, 2012 WL 6185867, at *6 (collecting cases).  Here, although Morjal's request is approximately double the judgment amount, no further downward adjustment is warranted.  Although not a high damages case, the work put in and judgment exercised by Morjal's counsel is reasonable for the result obtained.  *See Stephens*, 2012 WL 28722448, at *4 (declining to reduce fee request which was approximately double the amount of the accepted offer of judgment); *Lasswell*, 436 F. Supp. 2d 974 (awarding attorney's fees of $11,805.59 where the judgment amount was $1,500 and the parties had conducted minimal discovery prior to offer of judgment).

## CONCLUSION

For the foregoing reasons, Morjal's petition [#30] is granted in part and denied in part. The court awards Morjal $17,205.50 in attorney's fees.

Dated: May 29, 2013  Enter: _____
JOAN HUMPHREY LEFKOW
United States District Judge

12